NORTHWESTERN FIRE & MARINE INSURANCE CO., RESPONDENT, *v.* POLLARD ET AL., DEFENDANTS; FIRST NATIONAL BANK OF WINIFRED, APPELLANT.

(No. 5,722.)

(Submitted June 29, 1925. Decided July 18, 1925.)

[238 Pac. 594.]

*Mortgage   Foreclosure—Promissory   Notes—Guaranty—Subrogation.*

Waiver—Definition.

1. Waiver is the voluntary abandonment or surrender by a capable person, of a right known by him to exist, with the intent that such right shall be surrendered and such person forever deprived of its benefit; it may be effected by implication as well as by agreement.

Mortgages—Guaranty—Subrogation.

2. The guarantor of a mortgage debt can be subrogated to the rights of the mortgagee only by payment of the entire debt secured.

Same.

3. *Held,* under the evidence in an action to foreclose a mortgage purchased by plaintiff, that plaintiff did not waive any rights by sending interest coupons for collection to the firm from which he purchased the mortgage which had guaranteed its payment; that the guarantor by payment of the interest coupons was not subrogated to the rights of the mortgagee, and that a bank claiming to be the holder of the coupons by virtue of pledgee's sale was not entitled to share in the proceeds of the sale of the mortgaged property.

Mortgages, 27 **Cyc.,** p. 1406, n. 33, p. 1761, n. 53.
Subrogation, 37 **Cyc.,** p. 375, n. 59.
Waiver, 40 **Cyc.,** p. 253, n. 50, p. 268, n. 42.

*Appeal from District Court, Fergus County; Rudolph Von Toble, Judge.*

MORTGAGE FORECLOSURE SUIT by the Northwestern Fire & Marine Insurance Company against James M. Pollard, the First National Bank of Winifred, as successor to the Farm-

---

2. Right of subrogation, see note in 90 **Am. St. Rep.** 474.
Payment of whole debt as essential to right of surety to creditor's securities, see notes in 6 **Ann. Cas.** 204; **Ann. Cas.** 1917C, 1183. See, also, 25 **R. C. L.** 1318.

ers' State Bank of Winifred, and others. From a judgment denying the right of defendant bank to share in the proceeds of the sale of the mortgaged premises, it appeals. Affirmed.

*Messrs. Belden & DeKalb* and *Mr. Merle C. Groene,* for Appellant, submitted a brief, and one in reply to that of Respondent; *Mr. Groene* argued the cause orally.

Section 8261, Revised Codes of 1921, reads as follows: "The assignment of a debt secured by mortgage carries with it the security." This section is identical with section 2936 of the Civil Code of California (Kerr's Cyc. Codes 1920), and under that section the supreme court of that state has held to the rule that in the absence of any agreement to the contrary, an assignment of one of the interest notes carries with it a *pro rata* interest in the security afforded by the mortgage. (*Phelan* v. *Olney,* 6 Cal. 478; *Grattan* v. *Wiggins,* 23 Cal. 16, 30; *Redman* v. *Purrington,* 65 Cal. 271, 3 Pac. 883; see, also, *Union Trust Co.* v. *Monticello,* 63 N. Y. 311, 20 Am. Rep. 541; *Long Island Loan Co.* v. *Long Island City,* 178 N. Y. 588, 70 N. E. 1102; *Real Estate Trust Co.* v. *Pennsylvania Sugar Ref. Co.,* 237 Pa. 311, 43 L. R. A. (n. s.) 82, 85 Atl. 365; *Burke* v. *Short,* 79 Fed. 6; *Miller* v. *Campbell Com. Co.,* 13 Okl. 75, 74 Pac. 507.)

So it would appear that if respondent company did, in fact, assign the interest coupons to Leon M. Bolter Company, appellant, by reason of the pledgee's sale of coupons, and as the holder thereof, is entitled to its *pro rata* interest in the security afforded by the mortgage. That Leon M. Bolter became the owner of the four interest coupons, because they were in law assigned to them by respondent, see *Ketchum* v. *Duncan,* 96 U. S. 659, 24 L. Ed. 868 [see, also, Rose's U. S. Notes]; *Curtiss* v. *McCune,* 4 Neb. Unof. 483, 94 N. W. 984, 985; *Champion* v. *Hartford Inv. Co.,* 45 Kan. 103, 10 L. R. A. 754, 25 Pac. 590.

It is established that, subsequent to the execution of the mortgage, note and interest coupons by the mortgagors, the

Leon M. Bolter Company effected a sale of the mortgage to respondent, and, pursuant to such sale, the original mortgagee assigned the note and interest coupons to respondent, and, that in order to effect the sale, the Leon M. Bolter Company guaranteed the payment of the mortgage debt to respondent. We submit the interest coupons were not delivered to Leon M. Bolter Company under the guaranty, but that they were delivered to Leon M. Bolter Company for collection pursuant to a custom that existed at that time. This being so, we respectfully submit that respondent waived its guaranty, as its intention must govern in the matter (*Enterprise Sheet Metal Works* v. *Schendel,* 55 Mont. 42, 51, 173 Pac. 1059, 27 R. C. L. 911), and having waived its guaranty, the rules of law announced in *Ketchum* v. *Duncan, Curtis* v. *McCune* and *Champion* v. *Hartford Investment Company, supra,* are conclusive against respondent, and the judgment and decree of the lower court was contrary to law and contrary to the principles of equity.

*Mr. Ralph J. Anderson,* for Respondent, submitted a brief and argued the cause orally.

HONORABLE C. W. POMEROY, District Judge, sitting in place of MR. CHIEF JUSTICE CALLAWAY, absent on account of illness, delivered the opinion of the court.

Plaintiff commenced this action to foreclose a mortgage on real property securing a principal note and one of five interest coupons. The defendant First National Bank of Winifred answered, seeking to share in the proceeds of the sale of the mortgaged premises to the extent of the other four interest coupons owned by it. The trial court found against the contention of the defendant, and it appealed from the judgment. The note and mortgage were made to the Farmers' State Bank of Winifred, the predecessor of defendant bank, and, before maturity of any of the coupons, sold by Leon M. Bolter Company, and by the Farmers' State

Bank transferred to the plaintiff. The answer of defendant contains the following allegation: "That in order to effect the sale of said mortgage, the principal note and interest coupons, to plaintiff, the said Leon M. Bolter Company, a corporation, guaranteed the payment of the mortgage debt to plaintiff; that subsequent to the assignment of the said mortgage debt and the execution of said guaranty, the mortgagors in said mortgage, to-wit, James M. Pollard and Emma Pollard, his wife, failed to make the payments specified and called for in the four interest coupons mentioned and described hereinbefore in paragraph IV of this amended answer and cross-complaint, and in consequence of such default the said Leon M. Bolter Company, the corporation aforesaid, in accordance with its guaranty, did advance and pay the amount due thereon to the plaintiff in this action, and upon such payment the plaintiff elected to and did waive its right against the said Leon M. Bolter Company upon said guaranty and did thereupon duly assign, transfer, and deliver the said interest coupons to the said Leon M. Bolter Company, a corporation, and the said Leon M. Bolter Company, a corporation, thereupon became the owner and holder of said interest coupons and each of them." The plaintiff, by reply, admits the guaranty of payment, and denies the rest of the allegation.

On the trial the plaintiff introduced in evidence the note, coupon, mortgage and assignment of mortgage. F. S. Graham, the president of the defendant bank, testified in its behalf that the four interest coupons were sold after maturity at pledgee's sale on an indebtedness owing by the Leon M. Bolter Company to Harry Graham and sold by him to the bank; that the bank was still the holder of the coupons and had them in its possession. The coupons were introduced in evidence without objection. They are each indorsed: "Pay to the order of —— without recourse. Farmers' State Bank of Winifred, by N. E. Farrell, Cash-

ier.'' They were designated Exhibits 1, 2, 3 and 4, and
were severally further indorsed: Exhibit 1: ''Bankers' H. &
I. Co., No. 83–1101 Collection Bkrs. H. & I. Co. No. 45
First National Bank No. 1002 Winifred, Mont.'' Exhibit
2: ''Bankers' H. & I. Co., No. 250 Collection Bkrs. H. & I.
Co. No. 213.'' Exhibit 3: ''L. M. B. Co., No. 549, Leon
M. Bolter Co. 46 Collection.'' Exhibit 4: ''L. M. B. Co.
No. 966.'' It was agreed that all proceedings in connec-
tion with the pledgee's sale were regular.

The deposition of William Collins, taken by the plain-
tiff, was introduced in evidence by the defendant. He testi-
fied that he had been treasurer of the plaintiff since 1916
and secretary and treasurer since 1921; that he kept the
records of mortgages purchased, and followed up the collec-
tion of interest; that the four coupons were in the ordinary
course sent by mail or messenger for collection to the Bank-
ers' Holding & Investment Company or to the Leon M.
Bolter Company, Minneapolis; that Bolter was doing busi-
ness under both names. He states that letters written by
himself accompanied the coupons. He later states: ''I can-
not state definitely, but I presume that a letter was sent
with each of the four coupons.'' A copy of one letter was
identified by him and introduced in evidence. It is as fol-
lows: ''March 4, 1921. Leon M. Bolter Company, First
Nat'l–Soo Line Bldg., Minneapolis, Minnesota—Gentlemen:
We are inclosing herewith for favor of collection and returns
the following interest coupon notes due March 1st, 1921,
on loans purchased from your good company: No. 780—
Perrin M. Robinson, $150.00. No. 781—Peter Nelson,
$180.00 No. 782—James M. Pollard, $158.00 Please ac-
knowledge receipt. Yours very truly, W. Collins, Treasurer.
Encd.'' He testified that the letters sent with the coupons
were all in the same form so far as he could recall; that
payment was made to plaintiff through the Bankers' Hold-
ing & Investment Company or Leon M. Bolter Company,

either by mail or messenger from Bolter's office; that he does not recall whether letters accompanied the remittances; that the plaintiff does not have such letters; that correspondence relating to interest coupons is usually destroyed a reasonable time after coupons are paid; that, so far as he knew, the correspondence relating to these coupons has been destroyed; that he does not think there was any other correspondence between his company and the Bolter companies concerning the coupons; that there was no oral agreement or understanding between him as an officer of the plaintiff and any officer or agent of the Bolter companies relative to the payment of the coupons; that it was never indicated to him that any of the coupon payments were made as advancements by either of the Bolter companies; that in all cases at that time they forwarded interest coupon notes to the parties from whom they purchased mortgages, if they were in good standing, and he assumed that the other three coupons were so sent for collection the same as the 1921 coupon; and that it is the custom of most companies selling mortgages to handle the collection of interest coupons without expense to the holder of the mortgage, and the coupons in question were forwarded for collection pursuant to that custom.

The deposition of Leon M. Bolter, likewise taken by the plaintiff, was introduced in evidence by the defendant. He testified that he was president of the Leon M. Bolter Company from its organization in 1917 to May 12, 1923; that he was generally in charge of its business; that it made, bought and disposed of farm mortgages; that the company bought the mortgage in question and sold it to the plaintiff; that the Leon M. Bolter Company guaranteed in writing to pay the interest when due; that he made the statement upon memory and their usual custom at that time; that he did not have access to the writing by which the guaranty was made; that he personally negotiated the deal,

and at the time represented to Mr. Griffin of the Northwestern Fire & Marine Insurance Company that the interest would be paid promptly when due; that he believed there was some correspondence also; that it was not available; that he believed it to be in the hands of the defendant bank; that the coupons came into the possession of the Leon M. Bolter Company about the time that each respectively fell due; that the amounts were paid in full to the plaintiff by the Leon M. Bolter Company about the time that each respectively fell due; that the amounts were paid in full to the plaintiff by the Leon M. Bolter Company on or about their due dates; that he cannot recall the method of carrying out the transaction, whether by mail or messenger; that the accompanying correspondence, if any, should be in the file which was then in the office of the Leon M. Bolter Company; that he understood the file was with the defendant bank; and that the records of the company show remittances were made by the company's check to the plaintiff as follows: $115, March 1, 1918, $150, March 1, 1919, $150, February 28, 1920, and $150, March 5, 1921. The coupons were due March 1 of the several years. It was admitted that the mortgagors had not paid the coupons. There was no other testimony pertinent to this appeal.

The defendant contends that the plaintiff, by forwarding the coupons for collection to the Leon M. Bolter Company, waived its right to rely on the guaranty of that company, and that consequently the transaction became one of sale and transfer of the coupons.

A right may be waived by implication as well as by agreement. [1] ment. (*Anaconda Copper Min. Co.* v. *Ravalli County*, 56 Mont. 530, 186 Pac. 332.) "Waiver is the voluntary abandonment or surrender by a capable person, of a right known by him to exist, with the intent that such right shall be surrendered and such person forever deprived of its benefits. * * * If the person possessing such right

so express himself by agreement or so conduct himself in relation to the right as to manifest an intention to forego its benefits, he will be held to have waived the right and cannot later insist upon it. Or, as it has been said, waiver is a voluntary relinquishment or renunciation of some right, a foregoing or giving up of some benefit or advantage, which, but for such waiver, a party would have enjoyed. It may be proved by express declarations, or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage, or by a course of acts and conduct, or by so neglecting and failing to act, as to induce the belief that it was his intention and purpose to waive." (Bowers on Law of Waiver, sec. 1.)

"The question of waiver is mainly a question of intention, which lies at the foundation of the doctrine. Waiver must be manifested ,in some unequivocal manner, and to operate as such it must in all cases be intentional. There can be no waiver unless so intended by one party and so understood by the other, or one party has so acted as to mislead the other and is estopped thereby. Since intent is an operation of the mind, it should be proved and found as a fact, and is rarely to be inferred as a matter of law. An intention to make the waiver claimed should clearly be made to appear by the evidence; and the best evidence of intention is to be found in the language used by the parties. The true inquiry is what. was said or written, and whether what was said indicated the alleged intention. The secret understanding or intent of the parties is immaterial on the question of waiver. The intention need not necessarily be proved by express declarations, but may be shown by the acts and conduct of the parties, from which an intention to waive may be reasonably inferred, or even by nonaction on their part. Mere silence at a time when there is no occasion to speak is not a waiver, nor evidence from which waiver may be inferred, especially where such silence is

unaccompanied by any act calculated to mislead." (40 Cyc. 261.)

The relation of the parties at the time the waiver is [2, 3] claimed to have taken place is an important consideration. According to the pleadings, the Leon M. Bolter Company had guaranteed the payment of the mortgaged debt absolutely. According to the testimony of witness Bolter, the company had likewise guaranteed the payment of all the interest coupons.

"A guaranty is a promise to answer for the debt, default, or miscarriage of another person." (Rev. Codes 1921, sec. 8171.) "A guaranty is to be deemed unconditional unless its terms import some condition precedent to the liability of the guarantor." (*Id.*, sec. 8181.) "A guarantor of payment or performance is liable to the guarantee immediately upon the default of the principal, and without demand or notice." (*Id.*, sec. 8182.) "Mere delay on the part of a creditor to proceed against the principal, or to enforce any other remedy, does not exonerate a guarantor." (*Id.*, sec. 8192.)

Mr. Justice Holloway, in a concurring opinion in the case of *Square Butte State Bank* v. *Ballard,* 64 Mont. 554, 210 Pac. 889, says: "Speaking generally, a guaranty of payment is termed an absolute guaranty, while a guaranty of collection is a conditional guaranty." (See, to the same effect, 12 R. C. L. 1064.) "On an absolute guaranty, the guarantor is unconditionally bound to satisfy the obligation at its maturity." (12 R. C. L. 1089.) The guarantor can be subrogated to the rights of the mortgagee in the mortgaged premises only by the payment of the entire debt secured. (2 Jones on Mortgages, sec. 885a; 27 Cyc. 1433; 37 Cyc. 408, 465; 25 R. C. L. 1347; Stearns on Suretyship, p. 430.)

Such were the rights and liabilities of the parties when the coupons were sent by the plaintiff to the Leon M. Bolter Company for collection. Witness Collins, secretary and treasurer of the plaintiff, says it was the custom to send coupons

for collection to the parties from whom plaintiff purchased mortgages, and that the collections were handled without expense to the plaintiff. In the testimony of Leon M. Bolter, who conducted every transaction relating to the coupons his company had with the plaintiff, there is no suggestion that the plaintiff waived its rights under the guaranty, nor that his company was subrogated to the rights of the plaintiff in the mortgage security to the extent of the coupons paid. Strange to say, he was not asked by the defendant as to these matters on his cross-examination. Another incident worthy of note is that witness Bolter testified that he understood the files of his company were with the defendant bank. The defendant did not produce them nor explain their absence.

Defendant argues that the fact that the plaintiff did not mark the coupons ''Paid'' is an indication that they were transferred to the Leon M. Bolter Company. The fact is that they had passed out of the hands of the plaintiff before they were paid. In any event, the Leon M. Bolter Company failed to comply with the instructions in the letters accompanying the coupons to collect them, but paid them instead. The conclusion is irresistible that in paying the coupons the company intended only to carry out its guaranty with the plaintiff.

Our conclusion is that the trial court did not err in holding that the defendant bank was not entitled to share with the plaintiff in the proceeds of the sale of the mortgaged premises. No complaint is made by the defendant bank that the trial court failed to require that the coupons be satisfied out of any surplus remaining from the foreclosure sale after satisfaction of plaintiff's demands, and that question is not considered.

The judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES HOLLOWAY, GALEN, STARK and MATTHEWS concur.