No. 13580

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

JOHN T. KELLY and NICKI D.
KELLY, husband and wife,

                    Plaintiffs and Respondents,

-vs-

FLOYD M. LOVEJOY and BEVERLY
LOVEJOY, husband and wife,

                    Defendants and Appellants.

---

Appeal from:  District Court of the Thirteenth Judicial District,
              Honorable Charles Luedke, Judge presiding.

Counsel of Record:

    For Appellants:

        Pedersen, Herndon & Harper, Billings, Montana
        Gregory S. Munroe argued, Billings, Montana

    For Respondents:

        Peterson and Hunt, Billings, Montana
        Kenneth D. Peterson argued, Billings, Montana

---

                              Submitted:  May 6, 1977

                              Decided:  JUN 10 1977

Filed:  JUN 10 1977

*Thomas J. Kearney*
_____
                        Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Plaintiffs Kelly brought this action in the district court, Yellowstone County, seeking enforcement of a restrictive covenant by enjoining defendants Lovejoy from maintaining two horses on their property. The court enjoined the Lovejoys who now appeal that order. We reverse.

At the time this action was commenced both plaintiffs and defendants resided in a subdivision located a short distance outside the western city limits of Billings, Montana. The subdivision is located in an area that is primarily residential on the eastern portion located nearest to the city of Billings, but development becomes less dense as one nears the western boundary. This subdivision, known as the Yerger subdivision, was platted in 1956 by Henry Yerger. Subsequently in 1961 restrictive covenants were imposed upon the land in question by Yerger. The particular covenant at issue in this appeal states:

> "That no swine, poultry, goats, or livestock shall be permitted on the premises."

This case involves a dispute between two neighbors concerning defendants' maintenance of horses on their property in violation of the above covenant. The subdivision has a history of its residents maintaining horses upon their property. The first extensive development in the subdivision occurred in 1966 and horses have been present in the subdivision continuously thereafter. One John Miller, who was the second person to move into the subdivision, purchased five lots from Yerger. Subsequently in 1968 Miller purchased a horse which he maintained on his property for three to four years. Miller constructed a barn and fences on his property which remained at the date this action was commenced. Miller testified that neither Yerger nor any other resident ever objected to his horse.

- 2 -

Marvin Crick moved into the subdivision in 1973. His predecessor had maintained a horse on the property and a small barn was constructed thereon. Crick has kept at least one horse on his property from 1973 to the present.

Lovejoys moved into the Yerger subdivision in August, 1966. Initially the Lovejoys purchased four adjoining lots from Yerger. Subsequently, but prior to the commencement of this action, Lovejoys purchased two additional lots which adjoin their other property. The purpose of both land purchases was to provide an area in which to maintain horses near their home. A barn, haystack and other improvements incident to the maintenance of horses have been constructed on this property. Initially Lovejoys had one horse on their property; however in recent years two horses have been maintained.

Kellys moved into the subdivision in August, 1975, nine years after the Lovejoys. Kelly, a real estate broker, purchased a home located a short distance west of the area in which Lovejoys keep their horses. A grassy field which is a platted, but unconstructed street, separates the parties' property. Kelly testified that from his first visit to the subdivision he had noticed horses and improvements incident to their maintenance such as barns and haystacks. He further testified that he was fully aware that Lovejoys had at least one horse prior to the time he purchased his home. In regard to the covenant in question and his feelings about its obvious violation, Kelly testified:

> "Q. When you moved in, is it correct that you were not of the opinion that horses were restricted from the subdivision? A. I had believed through the restrictions and had seen the title report that livestock was not allowed in the subdivision.
>
> "Q. Didn't it cause you any concern that there were horses obvious in evidence in the subdivision? A. At that time I didn't think it was a problem.
>
> "Q. Is it true, then, that at that point in time

- 3 -

you acquiesced in the presence of those horses;
you didn't care? A. Obviously."

A dispute arose between the parties soon after the Kellys' arrival in the subdivision. Apparently the dispute centered around Kellys' dog barking at and harassing Lovejoys' horses.

Thereafter Kellys commenced this suit against Lovejoys and requested the court to enjoin Lovejoys from maintaining horses upon their property in violation of the restrictive covenant. The record reveals that Kellys did not make any attempt to resolve the problem by negotiation prior to the commencement of this action. Furthermore Kellys have not sought injunctive relief against Mr. Crick who also maintains a horse on his property in the Yerger subdivision.

Lovejoys raise three issues upon appeal:

1. Whether the covenant restricting livestock from the Yerger subdivision applies to horses.

2. Whether the covenant restricting horses from the Yerger subdivision is enforceable against the Lovejoys.

3. Whether the district court abused its discretion in granting an injunction on the facts of the instant case.

As to the first issue, we find absolutely no merit in Lovejoys' contention that horses are not included within the general term of livestock and therefore are not barred from the subdivision. True, the covenant does not specifically state that horses are not permitted in the subdivision. However livestock is specifically prohibited and any contention that horses are not livestock is absurd. The Montana statutes are filled with definitions of the term livestock which specifically state that horses are contained within this general category. Sections 84-406(3); 46-801.1; 46-2901(2), R.C.M. 1947. In view of the clear language of the covenant there is nothing for this Court

- 4 -

to construe. We have stated before that where the language of a restrictive covenant is plain, unambiguous, direct and certain and admits of but one meaning, it is the duty of this Court to declare what the terms of the covenants contain and not to insert a limitation not contained therein. Higdem v. Whitham, 167 Mont. 201, 536 P.2d 1185.

As to the second issue, the Kellys' admitted acquiescence to the presence of Lovejoys' horses constituted a waiver and Kellys are therefore estopped from asserting the restrictive covenant against Lovejoys. Waiver is generally defined as a voluntary and intentional relinquishment of a known right, claim or privilege. Mundt v. Mallon, 106 Mont. 242, 76 P.2d 326; Farmers Elevator Company of Reserve v. Anderson, ____Mont.____, 552 P.2d 63, 33 St.Rep. 614. Waiver may be proved by express declarations or by a course of acts and conduct so as to induce the belief that the intention and purpose was to waive. Northwestern Fire and Marine Insurance Co. v. Pollard, 74 Mont. 142, 238 P. 594.

In the instant case Kellys were aware of the covenant in question prior to the purchase of their home. Kellys voluntarily and intentionally waived their right to enforce the covenant against Lovejoys by their acquiescence in the presence of the horses. In view of such waiver Kellys are now estopped to assert the covenant against Lovejoys.

Whether there has been such acquiescence as to defeat the enforcement of a valid restriction depends upon the circumstances of each case and the character and materiality of the permitted breach. Kosel v. Stone, 146 Mont. 218, 404 P.2d 894.

In view of the above finding it is unnecessary for us to rule upon the third issue. The judgment of the district court is reversed and the injunction vacated. The cause is remanded to the district court for entry of judgment in favor of defendants Lovejoy.

- 5 -

_____
                                         Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices