No. 84-362

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

E.F. MATELICH CONSTRUCTION CO.,
a Montana corp.,

Plaintiff and Respondent,

-vs-

GOODFELLOW BROTHERS, INC.,

Defendants and Appellants,

-vs-

STATE OF MONTANA,

Cross-Claimant and Respondent.

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Mineral,
The Honorable Douglas Harkin, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Wellcome & Frost; Page Wellcome argued, Bozeman,
Montana

For Respondents:

Murphy, Robinson, Heckathorn & Phillips; Donald R.
Murray, Kalispell, Montana
W. D. Hutchison argued, Dept. of Highways, Helena,
Montana

Submitted: April 11, 1985

Decided: July 8, 1985

Filed: JUL 8 1985

Ethel M. Harrison

Clerk

Mr. Justice John C. Sheehy, delivered the Opinion of the Court.

This appeal by Goodfellow Brothers, Inc. from a judgment of the Fourth Judicial District, Mineral County, raises the following:

1. Is Goodfellow entitled to recover from the State sums it was required to pay to a subcontractor, Matelich, on a highway construction project that was redesigned while construction was in progress?

2. Was the delay of the District Court in making a decision in this case from the hearing date of September 30, 1983 to March 23, 1984, a denial of fundamental due process to Goodfellow under Art. II, § 16, of the Montana Constitution?

On November 23, 1970, Goodfellow, as a general contractor, contracted with the defendant, State of Montana, to construct a segment of interstate highway. Thereafter, Goodfellow contracted with E. F. Matelich Construction Company, a subcontractor, for the construction of certain bridges and concrete work on the project.

Matelich, prior to submitting its bid to Goodfellow, obtained a bid for the concrete work required on the construction project from Robert O'Conner. The bid submitted by O'Conner stated that the estimates given were conditioned upon concrete being available at the job site. Matelich accepted O'Conner's sub-bid on April 12, 1971.

In certain portions of the highway project, cuts were designed by the State through the mountainous area. Several of the cuts were designed with a steep backslope. It was found that some of the cuts were unstable. Some of these

- 2 -

cuts were redesigned by the State to provide for a less steep backslope but the changes in design required further excavation in excess of 125% of the original contract specification. All sides admit that the increased excavation delayed or postponed the hoped for date of completion of the project.

On November 6, 1972, Goodfellow and the State entered into a supplemental agreement described as a "novation covering the said excess quantities and work items affected by such excess." The supplemental agreement contained the following language:

> "(6) The CONTRACTOR waives any and all claims for payment in excess of those contemplated by said contract of November 23, 1970, and this novation, except those claims which may be based upon conditions not presently within the knowledge of either party or which are not within the ability of either party to anticipate."

Goodfellow, because of the delay, did not complete the necessary preparatory work until September 1973. When the preparatory work was finally done, there was no longer a source of concrete available at the jobsite. By reason thereof, O'Conner refused to perform the concrete work under his agreement with Matelich. There had been a source of concrete available at the jobsite during the 1971 work season and for most of the 1972 season. Since O'Conner refused to perform the work under his bid, Matelich was forced to complete the concrete work under another arrangement.

After the work was completed, Matelich brought suit against Goodfellow and the State of Montana in the District Court of Mineral County. Matelich alleged it was prevented from performing its work within a time limit specified in its subcontract with Goodfellow because the work schedule for the project had been changed by Goodfellow and the State.

- 3 -

Matelich sought damages for the increased costs which were caused by the delay in the performance of the preparatory work within the time limit specified in its subcontract. Goodfellow cross-claimed against the State for indemnification on Matelich's claim.

Originally, the District Court dismissed Matelich's claim. In the first trial, the District Court refused to permit damages to be established on the basis of O'Conner's bid because O'Conner had not prequalified with the Montana State Department of Highways as required by the specifications. That decision was appealed to this Court, and in E. F. Matelich Construction Company v. Goodfellow Brothers and State of Montana (Mont. 1982), 645 P.2d 391, 39 St.Rep. 831, this Court reversed and remanded for further proceedings.

At the second trial, the District Court found that Matelich was entitled to a judgment of $19,153.19 against Goodfellow but that Goodfellow was not entitled to reimbursement from the State of Montana because of the waiver of the November 6, 1972 supplemental agreement. Goodfellow paid the Matelich judgment, and now contends that it is entitled to reimbursement from the State notwithstanding the waiver clause.

Goodfellow, on appeal, claims it is entitled to reimbursement or indemnity from the State essentially on two grounds: (1) the waiver clause in the supplemental agreement of November 6, 1972 did not operate to bar its claim under the Matelich subcontract, and (2) the issue of waiver has been decided adversely against the State in another District Court action in the same district, involving the same project. Goodfellow claims that the State is barred

by res judicata and collateral estoppel from disputing Goodfellow's right to indemnity reimbursement.

The companion action on which Goodfellow claims either res judicata or collateral estoppel is Goodfellow, Inc. v. State of Montana, through its Highway Commission, cause no. 41911 in the Missoula District Court. There, Goodfellow sued for and on behalf of its subcontractor, Yardley Drilling Company for $52,060.00 and for itself $10,412.00 for costs brought about because of additional excavation required between stations 573 plus and 577 plus on the highway project. Yardley Drilling Company was the drilling and blasting subcontractor for Goodfellow. The District Court in that case concluded that the November 6, 1972 supplemental agreement referred only to excavation required at the "400 cut" and that any waiver contained in the supplemental agreement could not affect the delay and changes in design that were required between stations 573 and 577. The District Court entered judgment in favor of Goodfellow and its subcontractor, Yardley.

It is not necessary for us to decide the contentions with respect to res judicata and collateral estoppel because we determine that the waiver clause contained in the supplemental agreement of November 6, 1972 does not pertain to the difficulty that Matelich faced when the subcontractor, O'Conner, refused to go through with his subcontract because no concrete was available at the jobsite. Waiver is a voluntary relinquishment of a known right, Rase v. Cattle Mountain Ranch, Inc. (Mont. 1981), 38 St.Rep. 992, 631 P.2d 680; Kelly v. Lovejoy (Mont. 1977), 172 Mont. 516, 565 P.2d 321. Waiver is an affirmative defense (Rule 8(c), M.R.Civ.P.) and thus the burden of proof is on the party

raising the affirmative defense. The waiver clause itself in the supplemental agreement excepts "those claims which may be based on conditions not presently within the knowledge of either party or are not within the ability of either party to anticipate." Although the record is clear that at the time of the execution of the supplemental agreement on November 6, 1972, Goodfellow knew that there would be delays in the completion of the contract, nothing in the record indicates that either party anticipated that concrete would not be available to O'Conner when, some 10 months later, he was called upon to complete his subcontract with Matelich. Nor does the State dispute anywhere in the record that if the project had not been redesigned, and the project carried on according to schedule, that O'Conner would have had the concrete available to perform his subcontract.

We therefore hold that the District Court was clearly erroneous, Rule 52(b), M.R.Civ.P., in finding that Goodfellow is precluded by the waiver clause in the supplemental agreement from indemnity reimbursement from the State.

Any judgment against the State, of course, is subject to the provisions of § 18-1-404, MCA, that the State is not liable for interest prior to or after judgment or for punitive damages.

We turn next to the issue raised by Goodfellow that the delay of the District Court of approximately nine months from the time of hearing to the time of decision was a denial of due process to Goodfellow. Because we have otherwise determined that Goodfellow should prevail on this appeal, we have no occasion to examine the issue whether a District Court delay of such duration had the effect of

- 6 -

unconstitutionally denying due process.  The issue has become moot.

Accordingly, we reverse the District Court and remand the cause for entry of judgment in favor of Goodfellow and against the State of Montana in accordance with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Mr. Justice L. C. Gulbrandson, dissenting.

I respectfully dissent.

The majority has, in effect, ruled that as a matter of law Goodfellow did not have the ability to anticipate that concrete would not be available at the job site. In my view, the record is clear that at the time Goodfellow executed the supplemental agreement on November 6, 1972, Matelich's 270 day construction period had already ended. It is also clear that Matelich had not entered a subcontract with O'Conner, but was relying on a bid proposal from O'Conner dated November 5, 1970, which was conditioned upon concrete being available at the job site. O'Conner testified that his bid proposal would have been good through the 1971 period. When he was asked by Matelich to perform the final concrete work in September, 1973, he advised Matelich that his quoted figures were no longer adequate, and he and his crew were then employed by Matelich to complete the work. O'Conner had no legal obligation of any kind to Goodfellow, and Goodfellow was not aware of the conditional language in O'Conner's proposal to Matelich.

In my opinion, Goodfellow, in November, 1972, having negotiated the supplemental agreement for additional services, for which Goodfellow was to receive an additional $624,418, knew that the concrete work had to be performed as the last stage of the project. Goodfellow also would have known that all other concrete projects in the area had been completed and there was no reason for a concrete batch plant operation to remain in the area.

I would, therefore, affirm the judgment of the trial judge that Goodfellow was not entitled to recover from the State of Montana.

X. C. Gulbrandson
_____
Justice

-8-