MR. JUSTICE WEBER,
dissenting:
In part I, the majority opinion deals with the issues on statutes of limitation. The majority points out that constructive fraud was defined as fraud by this Court in Purcell v. Automatic Gas Distributors (Mont. 1983), [207 Mont. 223,] 673 P.2d 1246, 1251, 40 St.Rep. 1997, 2002. Next, reference is made to Section 27-2-203, MCA, which sets a two year statute of limitation for actions for relief on the ground of fraud. I agree with the conclusion in the majority opinion that Bankers Life correctly argued that a cause of action premised on constructive fraud is subject to a two year statute of limitation.
However, the majority next concludes that plaintiffs did not plead constructive fraud and that the jury did not rule on constructive fraud, as demonstrated by the special verdict form which referred only to the breach of the implied covenant of good faith and fair dealing. I disagree with that construction of the special verdict form. The form stated as follows:
SPECIAL JURY VERDICT
We, the Jury, answer the following questions as follows:
1. Do you find in favor of [check one]:
X Kelley W. Tynes and Walter E. Tynes, Jr.?
_Bankers Life Company?
If you find in favor of Bankers Life Company, do not proceed further, but advise the Bailiff that you have reached a verdict.
2. If you find in favor of Kelley W. Tynes and Walter E. Tynes, Jr., what amount of damages, if any, do you assess for the following:
For medical expenses: The sum of $ 49,167.09;
For emotional distress and general damages of Kelley W. Tynes: The sum of $ 100,000.00;
*371 For emotional distress
of Walter E. Tynes, Jr.: The sum of $ 100,000.00;
3. Do you find that Bankers Life Company has breached the implied covenant of good faith and fair dealing [check one]:
X Yes.
_No.
If your answer is “No”, do not proceed further, but advise the Bailiff that you have reached a verdict.
4. If your answer is “Yes”, do you find that Bankers Life Company acted with oppression, fraud or malice as defined in the instructions?
X Yes.
_No.
If your answer is “No”, do not proceed further, but advise the Bailiff that you have reached a verdict. If your answer is “Yes”, what amount do you assess as punitive damages:
The sum of $200,000.00
Dated this 11 day of March, 1984.
S/_
FOREPERSON
The verdict demonstrates that the jury found in favor of the two plaintiffs and assessed medical expenses, emotional distress, and general damages for both plaintiffs at a total of $249,167.09 without any reference to the legal theory upon which they made that award.
Court’s Instruction No. 13 stated in pertinent part as follows:
“Instruction No. 13
“Plaintiffs seek recovery on three [sic] theories of liability as follows:
“1. Breach of contract;
“2. Promissory Estoppel;
“3. Tort of bad faith, based upon either
“(a) an alleged violation of Montana Insurance Code; or
“(b) an alleged breach of implied duty of good faith to perform insurance contract;
“4. Constructive fraud.
“Court’s Instruction No. 33 on constructive fraud was:
“Instruction No. 33
“Constructive fraud is defined in the laws of Montana as:
“ ‘any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him by misleading another to his prejudice or to the prejudice of anyone claiming under him;’ (Section 28-2-406(1), M.C.A.)
*372 “In order to find liability for constructive fraud, you must find that Bankers Life made false statements of fact or withheld or concealed facts and that such falsely stated or withheld facts misled the plaintiffs or one of them to their prejudice resulting in an advantage to Bankers Life. In order to prove constructive fraud it is not necessary to show that Bankers Life acted with intent to deceive or mislead.”
I conclude that the issue of constructive fraud was barred by the two year statute of limitation and was improperly presented to the jury under the foregoing instructions. It is not possible to tell whether any of the damages awarded in paragraph 2 of the special verdict form were based on a constructive fraud theory. “Where it is impossible to say upon what theory or under what part of the court’s instructions a verdict is based, error in any one of the instructions which is prejudicial and which may influence the jury entitles the unsuccessful party to a new trial.” Roberts Realty Corp. v. City of Great Falls (1972), 160 Mont. 144, 159, 500 P.2d 956, 964. I would therefore reverse the District Court and send the matter back for new trial.
In part III, the majority deals with court’s Instructions No. 10 and 11. I conclude that Instruction No. 11 is deficient. It states:
“Instruction No. 11
“You are instructed that the knowledge of LaVerne Sebens, as agent for Bankers Life Company, is considered to be knowledge held by Bankers Life Company.”
This instruction requires a conclusion by the jury that all knowledge of Mr. Sebens must be considered knowledge held by Bankers Life. I do not believe that is a correct instruction under Wells-Dickey Co. v. American Alliance Ins. Co. (1924), 69 Mont. 586, 591, 223 P. 489, 490, in which this Court stated the law as:
“The rule that knowledge gained by an agent of an insurance company as to matters within the general scope of his authority is imputable to the company does not require the citation of authority.” The jury was not required to determine whether Sebens’ knowledge related to matters within the general scope of his authority. Bankers Life argues that there is substantial evidence to show that Mr. Sebens had acted as the agent insuring the plaintiffs for many years and that he therefore had two hats, the one being when he acted as agent for Bankers Life and the second when he acted for the plaintiffs. Under that circumstance, the jury should have been required to determine whether or not the knowledge being imputed to Bank *373 ers Life related to matters within the general scope of Seben’s authority.”
In part IV, the majority addresses the question of coverage and examines the legal principles of estoppel, waiver, and fraud to determine if error was committed. With regard to promissory estoppel, the majority refers to Keil v. Glacier Park, Inc. (1980), 188 Mont. 455, 462, 614 P.2d 502, 506 where this Court defined the elements of promissory estoppel as:
“(1) [A] promise clear and unambiguous in its terms;
“(2) reliance on the promise by the party to whom the promise is made; (3) reasonableness and foreseeability of the reliance; (4) the party asserting the reliance must be injured by the reliance. (Citations omitted.)”
The majority then refers to court’s Instruction No. 22 which stated as follows with regard to promissory estoppel:
“A promise which Bankers Life Company should reasonably expect to induce action on the part of Kelley Tynes or Walt Tynes, and which does induce such action is binding if injustice can be avoided only by enforcement of the promise.”
I conclude that the instruction does not adequately address the question of whether Bankers Life made a promise which was clear and unambiguous in its terms. The majority suggests that this may be found because Bankers Life treated Kelley as an insured when it paid some of the medical bills and represented to Wilson Center that Kelley was insured.
The Bankers Life letter to the Wilson Center contained the following statement as a last paragraph:
“However this is not a guarantee of benefits, the insured must meet the requirements of his policy before benefits will be payable on his claim. If you should have any further questions, please let us know.”
That paragraph is sufficient to raise a factual issue as to whether or not there was a clear and unambiguous promise by Bankers Life. That element was not included in court’s Instruction No. 22. I conclude that the jury instruction was incomplete and would require a modification of the instruction so that the jury would be required to determine whether or not all of the elements of promissory estoppel were present.
The majority next treats the question of waiver and concludes that because Bankers Life made an independent investigation of Kelley’s employment status in 1978, Bankers Life could have been found by *374 the jury to have relinquished any defense. The majority mentions that Bankers Life claims the facts of employment status were misrepresented. The uncontradicted facts are stronger than that. There is no dispute that the written application submitted on behalf of Kelley to Bankers Life falsely stated facts entitling him to coverage. In addition, the undisputed evidence was that Kelley was not regularly scheduled to work at least 25 hours per week and in fact worked less than 25 hours per week during the applicable periods of time. The uncontradicted evidence is that Kelley was not under the facts of his employment and the contract in question entitled to coverage as an employee. Coverage is gained only if Bankers Life was estopped from raising, or waived the question of coverage. As pointed out in the majority opinion, Kelly v. Lovejoy (1977), 172 Mont. 516, 520, 565 P.2d 321, 324, defines waiver as follows:
“Waiver is generally defined as a voluntary and intentional relinquishment of a known right, claim or privilege . . . Waiver may be proved by express declarations or by a course or acts or conduct so as to induce the belief that the intention and purpose was to waive. (Citations omitted.)”
I emphasize that the foregoing definition requires a determination that there has been a voluntary and intentional relinquishment of a known right. The second sentence refers to the matter of how that voluntary and intentional relinquishment of a known right is proved.
Court’s Instruction No. 19 stated:
“Instruction No. 19
“A waiver is defined as the intentional and voluntary relinquishment of a known right, claim or privilege. A waiver can also arise by conduct, in which case it is called an ‘implied waiver’. An implied waiver can occur only if the party relies on the waiver to his detriment.
“If you find that Bankers Life Company, by its conduct, has waived its right to deny coverage to Kelley Tynes, and if you find further that Walt and Kelley Tynes relied on such waiver to their detriment, then Bankers Life has waived its right to deny coverage.” The first sentence is correct. I believe the second sentence is an incorrect statement because it apparently allows waiver arising from conduct which causes the plaintiffs to rely on it, but without any reference to the intentional and voluntary relinquishment of a known right. The evidence demonstrates that Bankers Life did not realize that Kelley in fact could not qualify as an employee under *375 the terms of the policy. As a result I conclude that the giving of the instruction was incorrect under the facts of this case.
Section 72-20-201, MCA, sets forth the trustee’s obligation towards his beneficiary. That section of course pertains to the situation where a trust is present. I will not engage in an extended review of the cases discussed in the majority opinion. It seems clear to me that the statutory provisions set forth the standard which applies to a trustee. Bankers Life cannot properly be classed as that type of a trustee. I disagree with the conclusion that fiduciary duties as defined in the statute are simply a statement of the kind of good faith duties owed by an insurer to an insured. I conclude that this instruction should not have been given.
MR. CHIEF JUSTICE TURNAGE and MR. JUSTICE GULBRANDSON concur in the foregoing dissent.