Fred T. FOLEY

v.

COMMUNITY OIL COMPANY, INC., and Chevron Oil Company.

Civ. A. No. 74–99.

United States District Court,
D. New Hampshire.

Oct. 24, 1974.

**562**

Joseph F. McDowell, III, Craig, Wenners, Craig & McDowell, Manchester, N. H., for plaintiff.

Robert A. Wells, McLane, Graf, Greene & Brown, Manchester, N. H., for defendants.

## MEMORANDUM OPINION ON MOTION FOR JUDGMENT ON THE PLEADINGS

BOWNES, District Judge.

The defendants' motion for judgment on the pleadings is denied.

■ The application of Federal Rules of Civil Procedure 12(c) invokes the following standard of review:

> For purposes of the motion, all well-pleaded material allegations of the opposing party's pleadings are to be taken as true, and all allegations of the moving party which have been denied are taken as false. 2A Moore's Federal Practice § 12.15, p. 2343 (2d ed. 1968).

The cardinal rule is that a motion for judgment on the pleadings cannot be granted if a genuine issue of fact is presented.

Plaintiff is presently a citizen of the State of Maine, and was so situated at the commencement of this action. Defendant Chevron Oil Company (hereinafter referred to as Chevron) is a California corporation with its principal place of business in San Francisco. Defendant Community Oil Company, Inc. (hereinafter referred to as Community) was a Maine corporation which had its assets acquired by Chevron in 1960.

Plaintiff was employed by Community in Maine for approximately thirty years prior to Chevron's acquisition. Chevron's acquisition did not immediately affect plaintiff's work status and he continued to be employed in the same capacity at the same pay rate. From July 1, 1960, until June 1, 1968, plaintiff was the branch manager for Chevron in Waterville, Maine. On June 1, 1968, that position was terminated and plaintiff was asked to fill an equivalent position in Manchester, New Hampshire. Plaintiff accepted defendants' offer and sold his home in Maine, moved to Manchester with his wife, and bought a home in Manchester.

Plaintiff was informed in March of 1971 that his position was once again being eliminated. Plaintiff was informed that another position in Manchester might become available. He subsequently discovered that the position did open up, but that another person was found to fill it. On May 31, 1971, plaintiff's employment with defendants was terminated. At no time had plaintiff entered into a written employment contract with the defendants.

The basis of defendants' motion is that an implied employment contract does not exist between the parties, and assuming arguendo that a contract does exist, defendants did not commit a breach. The traditional rule of employment contracts was that, unless a specific term of employment was expressed, the hiring was at will and terminable at any time by either party. Am.Jur. 2d Master and Servant § 43 (1970). The rule which was designed, in the latter part of the nineteenth century, to protect a burgeoning and mobile economic society has been sharply criticized in recent years. Note, Implied Contract Rights to Job Security, 26 Stan. L.Rev. 335 (1974); Blades, Employment

at Will v. Individual Freedom: On Limiting the Abusive Exercise of Employer Power, 67 Col.L.Rev. 1404 (1967).

New Hampshire has recently recognized that the "iron hand" of the employer must be loosened. Monge v. Beebe Rubber Company, N. H. 316 A.2d 549 (1974). The court stated:

> In all employment contracts, whether at will or for a definite term, the employer's interest in running his business as he sees fit must be balanced against the interest of the employee in maintaining his employment, and the public's interest in maintaining a proper balance between the two. *Monge, supra,* 316 A.2d at 551.

In order to determine whether an implied contract existed between the parties, the court should consider all the facts and circumstances surrounding the employment relationship. Blumrosen, Settlement of Disputes Concerning the Exercise of Employer Disciplinary Power: U. S. Report, 18 Rutgers L.Rev. 407, 428 (1964).

■ Even when the employment at will approach was in its heyday, courts readily found that uprooting and moving a family was reason for finding a contractual relation between the parties. Smith v. Theobald, 86 Ky. 141, 5 S.W. 394 (1887); Schultz v. Simmons Fur Co., 46 Wash. 555, 90 P. 917 (1907). Modern-day courts have also been receptive to viewing moving one's family as consideration for establishing a contractual relation. Brawther v. H & R Block, Inc., 28 Cal.App.3d 131, 104 Cal. Rptr. 486 (1st Dist. 1972); McIntosh v. Murphy, 52 Hawaii 29, 469 P.2d 177 (1970).

■ Longevity of service can also give rise to an implied contract right. Defendants argue that an implied contract terminates after a reasonable time period. If I adopted defendants' rationale, an employee who had provided forty years of faithful service would be without judicial remedy if he was maliciously fired; whereas an employee who had only worked for two months would be afforded judicial relief. That result would be anomalous.

The employee, in providing long-term employment to a single employer substantially diminishes his economic mobility. Maloney v. E. I. Du Pont de Nemours & Co., 122 U.S.App.D.C. 268, 352 F.2d 936, 939 (1965), cert. denied, 383 U.S. 948, 86 S.Ct. 1201, 1211, 16 L.Ed.2d 210 (1966). The importance of longevity employment, in establishing employment rights was stated and recognized by Justice Stewart in Perry v. Sindermann, 408 U.S. 593, 602, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1971):

> A teacher, like the respondent, *who has held his position for a number of years,* might be able to show from the circumstances of this service—and from other relevant facts—that he has a legitimate claim of entitlement to job tenure. (Emphasis added.)

The next issue is whether plaintiff, in viewing all disputed facts in his favor, would be able to collect for breach of an employment contract.

In *Monge, supra,* 316 A.2d at 551, the court stated:

> We hold that a termination by the employer of a contract of employment at will which is motivated by bad faith or malice or based on retaliation is not the best interest of the economic system or the public good and constitutes a breach of the employment contract.

The court's purpose in evolving such a rule is to provide the economic system, and especially the nonunion worker, with a "certain stability of employment." *Monge, supra,* 316 A.2d at 552. This court will not stifle the purpose of *Monge* by limiting it to its particular facts. The task of circumscription belongs to its progenitors and not this court.

■ Plaintiff alleges that defendants acted in bad faith and were malicious

**564**

in their termination of his employment contract. Defendants allege that sound business reasons necessitated plaintiff's termination. A question of fact has, therefore, been presented and the jury is the final arbiter.

So ordered.