MR. JUSTICE JOHN C. HARRISON
delivered the opinion of the court.
This is an appeal from an order issued in the eleventh judicial district, Flathead County, dismissing petitioner’s request for writ of mandamus made pursuant to section 93-9102, R.C.M.1947. At the time the petition was filed, appellant Terry Schend was a probationary full-time police officer for the city of Whitefish, and respondent John M. Thorson was the mayor. The matter was heard in district court on April 17, 1975, and judgment for the respondent was entered several months later.
In lieu of a transcript, the record on appeal has been transmitted -to the Court as an “Agreed Statement of Evidence” in accordance with Rule 9(c), Montana Rules of Appellate Procedure.
From this document, it appears that the appellant was appointed to the position of police officer for the city of Whitefish on October 8, 1974. The city of Whitefish is a third class city in the state of Montana within the meaning of section 11-1824 et seq., R.C.M.1947, the “Metropolitan Police'Law.” As such, and pursuant to the authority contained therein, the community of Whitefish has placed itself within the purview of the Metropolitan Polic.e Law through the adoption of Chapter 2.44.010, Whitefish Municipal Code, which provides as follows:
“From and after the passage and approval of the ordinance codified herein, and from and after the effective date of the *7 ordinance as codified herein, and the police department of the city, shall be under and within the provisions of the Metropolitan Police Law of the state. The police department of the city shall be organized, managed, conducted and controlled as in the state law and this chapter provided.”
Chapter 2.44.040 of the Whiterjsh Municipal Code provides that all applicants for the positio)? of police officer must be appointed by the mayor and confirrrjed by the city council, but only after the applicant has successfully passed an examination, and a certificate of qualification has been filed with the mayor. The applicant is then eligible to serve a “probationary period” as a police officer which may not exceed six months. Chapter 2.44.040 also provides the means by which an appointment may be revoked by the mayor:
“* * * At any time before the end of such probationary period the mayor may revoke such appointment. After the end of such probationary period, and within thirty days thereafter, the appointment of such applicant must be submitted to the city council, and if such appointment is confirmed by the city council, such applicant becomes a member of the police force of the city, and shall hold such position during good behavior, unless suspended or discharged as provided by law.”
The above-cited section is almost identical to section 11-1803, R.C.M.1947, except that the state law was amended in 1973 to extend the maximum possible probationary term from six months to one year. The parties are in complete agreement that under the statute and code section cited above, and under the rule followed by a majority of jurisdictions, that the legislature may validly authorize the removal of a probationary public employee or officer in a summary fashion, without-necessity of cause or hearing. State ex rel. Nagle v. Sullivan, 98 Mont. 425, 40 P.2d 995.
On February 28, 1975, almost five months since his appointment, Schend receiyed a letter from respondent Thorson placing him on notice that his appointment to the police force *8 would be revoked as of March 15, 1975. The letter also contained certain statements regarding the appellant’s performance as a police officer:
“Due to your performance of duty, attitude towards and lack of desire to cooperate with those in charge * * * your services will no longer be required or desired in your capacity as a member of the Whitefish Police Department.”
The appellant, pursuant to section 11-1806, R.C.M.1947, requested a hearing before the Whitefish Police Commission. This request was denied.
From this summary of stipulated facts emerges but one single issue of constitutional law. Does the mayor of a city, which is subject to the provisions of a Metropolitan Police Law, and which grants the authority to discharge a police officer summarily during his period of probation, violate the due process clause of the Fourteenth Amendment to the United States Constitution when the notice of termination is accompanied by a statement of reasons for letting him go and no opportunity to dispute this statement is provided? We answer this question negatively.
A similar question has been treated by the United States Supreme Court in Board of Regents v. Roth, 408 U.S. 564, 570, 573, 577, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548. The court held in that case that the claimed right of a state teacher to a hearing prior to the nonrenewal of his employment agreement did not come within the purview of the concept of due process when that teacher has not achieved the status of tenure. In rendering its decision, the United States Supreme Court devoted a considerable portion of its opinion to discussing what frame of reference is properly employed in determining issues of procedural due process. In Roth, the federal district court committed error when it reduced the issue to a mere balancing or weighing of the interests involved — that is the employer’s interest in denying reemployment summarily, as opposed to the employee’s interest in reemployment. The court was careful to *9 point out that while the balancing process is essential to the determination of what form a required hearing must take in a particular situation, the question of whether or not due process requirements are applicable at all demands a different type of analysis:
“* * * But, to determine whether due process requirements apply in the first place, we must look not to the ‘weight’ but to the nature of the interest at stake. * * * We must look to see if the interest is within the Fourteenth Amendment’s protection of liberty and property.”
See also Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113. This essential distinction in analysis is one which cannot be ignored by this Court in light of the question presented.
The due process right to hearing was intended to provide an opportunity for a person to vindicate only those claims to which they are legitimately entitled. In Roth, the United States Supreme Court could not sustain the teacher’s Fourteenth Amendment claim, because he failed to show how the decision not to rehire, deprived him of an interest in “liberty” despite his lack of tenure or formal contract. Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570. In doing so, however, the court, in Roth, left no doubt as to the possibility that such a showing could be made in a future case:
“The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. * * * Had it done so, this would be a different case. For ‘[w]here a person’s good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.’ [Citing cases.] In such a case, due process would accord an opportunity to refute the charge before University officials. * * *” (Emphasis added.)
We take judicial notice that there is no substantial dif *10 ference between the status of a nontenured teacher and that of a probationary police officer.
Due process adjudication involves typically two analytically distinct issues — whether the right of due process is applicable in the first instance; and if so, what specific procedures are “due” in each case. The right itself only becomes applicable where one’s “property” or “liberty” interests within the meaning of the Fifth or Fourteenth Amendment are at stake. Whether an individual’s “entitlement to employment” is sufficient to give rise to a Constitution’s claim becomes the threshold question in these types of cases.
In Roth, the court held:
“* * * To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.
“Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. * * *”
Here the nature of- the interest is the right to a job as a policeman. Can this be said to be encompassed within the terms “liberty” or “property”? We think not.
The very nature of the concept of property is not and was not intended to be static. Board of Regents v. Roth, supra, (procedural due process as extended beyond the actual ownership of real estate, chattels or money); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90, (driver’s license); Goldberg v. *11 Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (welfare benefits); Connell v. Higginbotham, 403 U.S. 207, 91 S.Ct. 1772, 29 L.Ed.2d 418, (public employment); and Stanford v. Gas Service Company, 346 F.Supp. 717, (Kan.1972) (utility services). However, the guide furnished by Roth clearly indicates that it is only a vested right which cannot be taken away except by due process of law, 16 Am.Jur.2d, § 365, p. 694. A probationary police officer under Montana law enjoys nó property or vested right. His status is that of a temporary employee and until confirmation he has no possible property' interest.
Mr. Justice Holmes wrote in McAuliffe v. Mayor, Etc. of City of New Bedford, 155 Mass. 216, 29 N.E. 517:
“* * * There are few employments for hire in which the servant does not agree to suspend his constitutional rights of free speech as well as of idleness by the implied terms of his contract. The servant cannot complain, as he takes the employment on. the terms which are offered him. On the same principle the city may impose any reasonable condition upon holding offices within its control.' * * *”
See 41 U. of Chicago Law Review 297; 26 Stanford Law Review 335.
Federal cases have recognized the distinction between probation and nonprobation employees. Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15; Sampson v. Murray, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166. Here the appellants interest is more one of expectancy of employment than anv property interest. Leek v. Theis, 217 Kan. 784, 539 P.2d 304; Wheeler v. School District #20, in County of El. Paso, (Colo.1975), 535 P.2d 206; Tupper v. Fairview Hospital & Training Ctr., M. H. D., (Or.App.1975), 540 P.2d 401; Turner v. Board of Trustees, Calexico U. Sch. Dist., 14 Cal.3d 540, 121 Cal.Rptr. 715, 535 P.2d 1171.
Therefore, because the controlling statute gave the Mayor the *12 right to terminate the probationary officer without cause and without a hearing we find no violation of any accused right of such prohibiting policies and no violation of due process.
MR. JUSTICES CASTLES and HASWELL and the Honorable W. W. LESSLEY, District Judge, sitting for Chief Justice Harrison, concur.