No. 13189

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

FARMERS ELEVATOR COMPANY OF
RESERVE, a corporation,

Plaintiff and Respondent,

-vs-

DALE ANDERSON,

Defendant and Appellant.

Appeal from: District Court of the Fifteenth Judicial District,
Honorable Jack L. Green, Judge presiding.

Counsel of Record:

For Appellant:

Loren J. O'Toole argued, Plentywood, Montana

For Respondent:

Graybill, Ostrem, Warner and Crotty, Great Falls,
Montana
Harrison, Loendorf and Poston, Helena, Montana
Jerome T. Loendorf argued, Helena, Montana

Submitted: May 24, 1976

Decided: JUL -2 1976

Filed: JUL -2 1976

*Thomas J. Kearney*
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal is taken from a judgment entered August 25, 1975, in the district court, Sheridan County. Farmers Elevator Co. of Reserve, a cooperative enterprise, successfully sought damages for breach of a contract made with Dale Anderson, a local farmer in the Dagmar area.

Anderson had been a patron of Farmers Elevator Co. for several years, and during the year 1972 he made numerous contracts with it for the sale and purchase of his durum wheat. At the time this action was commenced, Anderson had been farming for about ten years. He was thus generally familiar with the nature of grain trading in his area, and with the customs and procedures utilized by plaintiff in the conduct of its operations.

On October 28, 1972, Anderson contracted with the Farmers Elevator Co. for the sale of 18,000 bushels of durum wheat at a price stipulated in the record to be $1.80 per bushel. Farmers Elevator Co. resold the wheat three days later for $2.44 per bushel to the Farmers Union Grain Terminal Association outlet in Great Falls, Montana. The contract was strictly oral, the only written evidence of the agreement being an unsigned notation in a small "book" used by Farmers Elevator Co. to record its purchases in the ordinary course of its business. Testimony and a confirmatory memorandum establish that the approximate delivery date contemplated by the parties was February 1973.

Although the contract was oral in nature, we note Anderson has at no time denied the existence of the contract, the quantity contracted for, or the stipulated price. Farmers Elevator Co. normally contracts orally with its patrons and pays by check upon

delivery, whether in full or partial satisfaction of its purchase contracts.

Pursuant to his contract, Anderson delivered 8,802 bushels of durum wheat in approximately 36 truckloads between March 27, 1973, and May 30, 1973. He was paid for the delivered grain by customary check, except for the sum of $2,575.33. Although a check for this amount was issued by Farmers Elevator Co., it has not been delivered and is still due and owing to Anderson.

The reason for the variance between the proposed delivery date and the dates that delivery actually took place, is critical to the resolution of the issues presented. The record establishes, and the district court in fact found, that Farmers Elevator Co.'s ability to accept deliveries from its patrons is wholly dependent upon the availability of elevator space. In turn, the availability of elevator space depends directly on the availability of transportation for outgoing shipments. When sufficient rail cars or trucks cannot be found to transport the grain, the elevator becomes backlogged for space. The delivery dates of established contracts must often be extended until transportation is secured, and the elevator is again capable of handling incoming deliveries. During the fall 1972 and early 1973, a serious regional boxcar shortage existed and consequently delivery dates on all purchase contracts were moved ahead. Because of the resultant shortage of elevator space, Anderson was allowed to deliver less than half of the durum wheat which he had sold, until transportation was obtained in early June 1973.

By early summer the elevator was again in a position to receive wheat from Anderson. Anderson was well aware of this, as

the record reveals he was contacted by phone, as well as by letters dated July 31, August 13, and September 18, 1973. During August 1973 Anderson was personally visited by plaintiff's Board of Directors. On September 27, 1973, the Board Chairman learned by telephone of Anderson's refusal to deliver further on his contract. The next day plaintiff was forced to cover for the undelivered wheat, and purchased 9,198 bushels at the then current market price, which by that time had risen to $6.50 per bushel. It was established at trial that Anderson sold his wheat to another elevator in North Dakota for $5.35 per bushel. Anderson raised and harvested more wheat in August and September 1973, but he never tendered any of this to plaintiff or made any further effort to honor his contract with it.

Two basic issues are raised on appeal:

(1) Is enforcement of the oral agreement and the alleged modification as to the date of delivery barred by the Statute of Frauds, section 87A-2-201, R.C.M. 1947?

(2) Were the delivery terms of the agreement in fact modified by a course of performance within the meaning of section 87A-2-208, R.C.M. 1947?

In a commercial setting such as here, Montana law provides that no contract for the sale of goods, for the price of $500 or more, is enforceable unless some writing exists sufficient to establish that an agreement between the parties was reached. Section 87A-2-201, R.C.M. 1947. However, several exceptions are listed in the statute, one is:

> "(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable
>
> "(a) * * *

- 4 -

"(b) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted * * *."

That the agreement, but for the lack of writing, is "valid in other respects" is not contested by the parties. There can be no doubt of Anderson's admissions, in his deposition and at trial, as to the existence of the contract. At trial he testified:

"Q. So your testimony is that there was an agreement for you to sell eighteen thousand bushels of durum? A. Yes.

"Q. And that agreement was made in October, October 28th, of 1972, is that correct? A. Yes."

The so-called "judicial admission" exception to the Statute of Frauds as set forth by section 87A-2-201(3)(b) prevents a litigant from simultaneously admitting the existence of a contract and claiming the benefits of the statute. 2 Williston on Sales, (4th Ed.), §14-9, p. 303. The basic rationale behind this exception relates directly to the very purpose of the rule itself, as enunciated in Gravelin v. Porier, 77 Mont. 260, 281, 282, 250 P. 823:

"'As the primary object is to prevent mistakes, frauds, and perjuries, by substituting written for oral evidence in the most important classes of contracts, the courts of equity have established the principle * * * that it shall not be used as an instrument for the accomplishment of fraudulent purposes; designed to prevent fraud, it shall not be permitted to work fraud.'"

In that the original oral contract is not rendered unenforceable by the Statute of Frauds, we next examine the effect of the alleged modification as to the date of delivery. Section 87A-2-209(3), provides:

"The requirements of the statute of frauds section of this chapter * * * must be satisfied if the contract as modified is within its provisions."

While the record is clear as to Anderson's "admissions" regarding the original contract, no such admission was shown concerning the alleged modification of the delivery date. Anderson argues that if the original contract is enforceable that the exception which brought the original oral contract out of the Statute of Frauds, cannot be applied to the alleged oral modification and enforcement of the contract as modified under section 87A-2-209(3) is barred. However, this does not complete the analysis under the facts here. Anderson's deliveries after the set date must be considered.

Section 87A-2-209(4) provides that an attempt at modification which is void under the statute of frauds may still operate as a waiver to assert the defense through the course of performance engaged in by the parties under section 87A-2-208, R.C.M. 1947. 2 Williston on Sales (4th Ed.), § 12-6, p. 23. While the trial court did not make a specific finding holding there was a waiver, its findings when read as a whole, do find there was a waiver and consent by Anderson. Under section 87A-1-103, the Uniform Commercial Code can be supplemented, for purposes of interpretation, by the general principles of law and equity, unless specifically displaced by the Code. The facts presented in the instant case, require that we find that a waiver such as is contemplated by section 87A-2-209(4) occurred and we agree.

The term "waiver" is generally defined as a voluntary and intentional relinquishment of a known right, claim or privilege. Mundt v. Mallon, 106 Mont. 242, 76 P.2d 326; State ex rel. Bingham

v. District Court, 80 Mont. 97, 257 P. 1014. In Northwestern Fire

& Marine Insurance Co. v. Pollard, 74 Mont. 142, 149, 238 P. 594,

it is stated:

> "'* * * waiver is a voluntary relinquishment or re-
> nunciation of some right, a foregoing or giving up
> of some benefit or advantage, which, but for such
> waiver, a party would have enjoyed. It may be proved
> by express declarations * * * <u>or by a course of acts
> and conduct * * * as to induce the belief that it was
> his intention and purpose to waive.</u>'" (Emphasis supplied.)

By delivering, pursuant to contract, approximately 36

truckloads of wheat to the elevator between March 27 and May 30,

1973, Anderson established a course of conduct sufficient to con-

stitute a waiver of his right to assert a defense under the

statute of frauds. Anderson began to deliver on a date well

after the delivery date originally contemplated, and his actions

certainly induced plaintiff's apparent belief the contract would

be honored. The enforcement of the oral contract, as modified,

is not barred under section 87A-2-201, R.C.M. 1947.

The remaining issue is whether the actions of Anderson

between March 27 and May 30, 1973, constituted a "course of per-

formance" and whether these acts were, in fact, sufficient to

modify the original oral contract as to the date of delivery.

Section 87A-1-205(1), R.C.M. 1947, defines a course of performance

as:

> "* * * a sequence of previous conduct between the parties
> to a particular transaction which is fairly to be regarded
> as establishing a common basis of understanding for inter-
> preting their expressions and other conduct."

Under section 87A-2-208(1) "any course of performance accepted or

acquiesced in without objection" is relevant to determine the

meaning of the agreement under scrutiny.

It is clear the delivery of 36 truckloads of wheat by Anderson is a course of performance within the ambit of section 87A-1-205(1), and these repeated acts of delivery were sufficient for the district court to imply a finding of acceptance or acquiescense in the elevator's need to extend the delivery date. Anderson's failure to make timely objection to the elevator's temporary refusal to accept delivery is of particular significance here. For although section 87A-2-208 would not specifically require a timely objection under these circumstances, such a condition must be implied if the law is to be construed with any meaning in the commercial setting. Oskey Gasoline and Oil Co., Inc. v. OKC Refining, Inc., 364 F.Supp. 1137; Flood v. M.P. Clark, Inc., 319 F.Supp. 1043.

The judgment is affirmed.

_____
Justice

We Concur:

_____
_____
_____

_____
Justices

_____
Hon. Gordon R. Bennett, District
Judge, sitting for Mr. Chief
Justice James T. Harrison.