No. 80-281

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

LEO K. REITER,

Plaintiff and Appellant,

-vs-

YELLOWSTONE COUNTY, MONTANA, et al.,

Defendants and Respondents.

Appeal from: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, The Honorable
Robert H. Wilson, Judge presiding.

Counsel of Record:

For Appellant:

Boschert & Boschert, Billings, Montana

For Respondents:

McNamer, Thompson & Cashmore, Billings, Montana

Submitted on Briefs: December 17, 1980

Decided: MAY - 4 1981

Filed: MAY - 4 1981

*Thomas J. Kearney*
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Leo Reiter initiated this action in the District Court seeking reinstatement and back pay as a result of respondents' failure to hold a hearing prior to the termination of his employment. Respondents' motion for summary judgment was granted on the ground that Reiter was not entitled to a pretermination hearing as a matter of law. From this summary judgment, Reiter appeals.

At the time of his discharge on September 22, 1978, Reiter had been employed for nearly 18 years as a custodian at the Yellowstone County Courthouse, and had attained the position of night supervisor. Following a disagreement with custodian Harry Evans over work to be performed, Reiter terminated Evans' employment. Shortly thereafter, Reiter was informed by his supervisor, Paul King, that his own employment was terminated.

At an informal meeting with the county commissioners on September 18, 1978, Reiter was informed he would be suspended until a hearing was held to determine the facts. In response to Reiter's attempts to discuss the situation, the county commissioners repeatedly promised that a hearing would be held.

Subsequently, Reiter received a written list of reasons for his discharge, including the unauthorized firing of Evans, leaving the building during working hours, and letting the men off early. Appellant contests the validity of the reasons. The commissioners offered to reinstate Reiter as a custodian but not as a supervisor. Reiter refused the offer, apparently because the proposed contract was demeaning in tone. No hearing was held, and Reiter's discharge became final. Evans replaced Reiter as night supervisor. In view of the remedy requested, it is essential to note that the position of night supervisor was subsequently abolished.

Reiter's employment was not covered by any written

contract or collective bargaining agreement or ordinance. Based on the longevity of his service and the fact that he was a permanent employee, Reiter claims that he had a property interest in his continued employment and that therefore, he was entitled to procedural due process prior to his dismissal.

In granting respondents' motion for summary judgment, the District Court found that section 39-2-503, MCA, providing that an employment with no specified term may be terminated at the will of either party was controlling and that Reiter had no constitutional right to a hearing.

We find the issues raised by this appeal are:

1) Was the appellant denied his due process rights when he was discharged without a prior hearing to determine if there was just cause for the termination?

2) Was the appellant entitled to a pretermination hearing by virtue of the promise made by the commissioners that he would be given a hearing?

I.  DUE PROCESS

Appellant argues that he was entitled to procedural due process prior to his termination. He relies primarily on the following language from Perry v. Sindermann (1972), 408 U.S. 593, 602, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570:

> "A teacher, like the respondent, who has held
> his position for a number of years, might be
> able to show from the circumstances of this
> service--and from other relevant facts--that he
> has a legitimate claim of entitlement to job
> tenure."

As "circumstances" and "other relevant facts" he points to his longevity of service, his supervisory position, his retirement and insurance benefits, and the fact that he was promised a hearing. He asserts that these factors gave him a "legitimate claim of entitlement to continued employment" which is entitled to due process protection according to Perry and Board of Regents v. Roth (1972), 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548. Appellant also argues he possessed a property right by virtue of

an implied covenant of good faith.

In order to determine whether due process requirements have been violated in this case, it must be decided whether appellant had either a "liberty" or a "property" interest which falls within the protection of the Fourteenth Amendment to the United States Constitution and Article II, Section 17, of the Montana Constitution. Board of Regents v. Roth, supra; Schend v. Thorson (1976), 170 Mont. 5, 549 P.2d 809. If appellant can cross this threshold, the analysis proceeds to the second question, i.e., what specific procedures are due in this case.

In the leading case of Roth, a nontenured teacher claimed that a violation of his due process rights occurred when he was denied an opportunity to be heard in regard to his dismissal at the end of his initial one-year contract with the university. A statute provided for the acquisition of tenure after four years of year-to-year employment. After acquiring tenure the teacher would be entitled by statute to continued employment during good behavior and satisfactory performance, with discharge allowed only for cause. The Court found that Roth had shown no "liberty" interest entitled to protection, since no stigma had been imposed on his "good name, reputation, honor or integrity." Nor did Roth have a "property" interest, for:

> "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548.

The employee must be able to point to an independent source such as state law or rules or understandings between the employer and his employees. The terms of Roth's appointment were contained in the statute and in his contract, in which there was no support for his claim of entitlement to continued employment.

The evidence in the instant case, even when viewed in the light most favorable to appellant, does not show a tradition or

- 4 -

an unwritten policy concerning job security for county employees. The evidence shows that Reiter went to the county commissioners after his supervisor dismissed him, and that initially the commissioners promised him a hearing but later decided he was not entitled to a hearing. The commissioners, having final authority in county personnel matters, then approved of Reiter's discharge. Although Reiter may have been treated unfairly, he seeks to stretch the due process clause beyond its limits by asserting the existence of a protected property interest based upon longevity of service, in view of section 39-2-503, MCA. That statute provides:

> "An employment having no specified term may be terminated at the will of either party on notice to the other . . ."

The United States Supreme Court has recently rejected a claim similar to Reiter's in Bishop v. Wood (1976), 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684. A policeman who had become a permanent employee after passing the probationary stage claimed he was entitled to a pretermination hearing by virtue of a city ordinance providing that permanent employees could be discharged for unsatisfactory performance, negligence, inefficiency or unfitness. The Court, recognizing that a property interest could be created by ordinance or by implied contract, stated that in either case the legitimacy of the claim ultimately must be decided by reference to state law. Based on state law the Court found that the policeman held his job at the will and pleasure of the city. Further, the policeman had no "liberty" interest, for even assuming his discharge was unjustified it is not a significant deprivation when one's discharge merely makes one less attractive to other employees.

It is clear from the above-discussed cases that property interests are created and defined by state law. The Montana statute creates no property interest in employment if there is no specified term. Appellant seeks to circumvent the statute

- 5 -

through a theory of implied contract and implied covenant of good faith and fair dealing. In effect his argument is that due to his longevity of service he had an implied contract of employment, that in the implied contract there was an implied covenant of good faith, and that his discharge was in bad faith. Appellant does not claim a breach of contract, but rather argues that the implied covenant of good faith constituted a property interest entitling him to due process.

There is some basis for implying covenants of good faith in contracts. See section 28-1-201, MCA; Foley v. Community Oil Co., Inc., (D.C.N.H. 1974), 64 F.R.D. 561; Monge v. Beebe Rubber Co. (N.H. 1974), 316 A.2d 549; Fortune v. National Cash Register (1977), 373 Mass. 96, 364 N.E.2d 1251. All of these cases were breach of contract actions and none involved a statute. In Monge the court discussed the common-law rule of at-will employment contracts, noting that it was harsh and outdated, then modified the rule by holding that termination motivated by bad faith or retaliation constituted a breach of contract. After this modification of the "at-will" rule, the New Hampshire federal court in Foley applied it in denying the employer's motion for judgment on the pleadings. The Foley case involved an employee of 40 years service who was unjustly discharged. The federal district court stated that longevity of service might give rise to an implied contract right, but the court was no longer bound by the strict common-law "at-will" rule according to the law of the state in which it was sitting. In Massachusetts, the discharge of an employee who had served for 25 years was found to be a breach of the implied covenant of good faith because the employer was attempting to avoid payment of a substantial commission. In none of these cases was there a procedural due process issue.

The doctrine of good faith and fair dealing in contracts has been narrowly applied in cases where unconscionable conduct on an employer's part must be deterred. The doctrine has also

been used extensively in insurance law to protect the insured. See First Security Bank of Bozeman v. Goddard (1979), ___Mont.___, 593 P.2d 1040, 36 St.Rep. 854. In Kenneally v. Orgain (1980), ____ Mont.____, 606 P.2d 127, 37 St.Rep. 154, we rejected a claim in tort for wrongful discharge, although the employee had seven years of service, because there was no violation of public policy.

Appellant's argument on implied contracts cannot successfully circumvent the Montana statute which clearly denies his claim of entitlement to continued employment. Even though appellant may have had an implied contract with the county by virtue of his longevity of service, it would be a contradiction in terms to say that he had an "implied specified" period of employment. A specified term is one which the parties expressed, and there was no expression here concerning the length of the employment. Section 39-2-503, MCA, operates to fill the gap left by the parties by defining the relationship as an "at-will" employment. While the rule may well be outdated, it is uniquely a province of the legislature to change it.

Further, assuming arguendo that appellant had an implied contract with an implied covenant of good faith, the employer did not act in bad faith because its conduct was statutorily permissible. Reiter was not employed on a "discharge for cause only" basis, according to the statute.

In summary, we hold that appellant was not denied his procedural due process rights when he was discharged without a hearing because section 39-2-503, MCA, negates his claim of a property interest protected by the United States and Montana Constitutions.

II. ENFORCEABLE PROMISE, WAIVER AND ESTOPPEL

The record indicates that at a meeting with the commissioners on September 18, 1979, Reiter was repeatedly promised a hearing. The commissioner refused to discuss the reasons for his discharge, stating that a hearing would be scheduled. Sub-

sequently, on October 23, 1978, Reiter received a letter from the deputy county attorney, which stated in part:

" . . . our studies have indicated that you are not entitled to a grievance hearing, and therefore none will be scheduled."

The effect of the letter was to deny Reiter the opportunity to refute the charges made against him in the list of reasons for his discharge. The issue is whether Reiter was entitled to a hearing by virtue of the commissioners' promise to hold a hearing.

The promise to hold a hearing was not supported by any independent consideration. Therefore, it was not an enforceable promise under contract law, independent of the employment contract. Nor could the promise be enforceable as an implied term of Reiter's implied contract of employment, assuming he had such a contract. When Reiter was employed, the predecessor to section 39-2-503, MCA, was in effect. That statute provides that an employment without a specified length may be terminated at the will of the employer, i.e. that no reason or good cause need be shown. This statute was in effect a part of the employment contract between the county and Reiter. A promise to hold a hearing, given at a later date, could not modify that part of the contract without independent consideration unless consented to by both parties in writing. Section 28-1-1601, MCA.

Did the promise operate as a waiver of the county's right to fire Reiter without a hearing? A waiver is defined as the intentional and voluntary relinquishment of a known right, claim or privilege. Farmer's Elevator Co. of Reserve v. Anderson (1976), 170 Mont. 175, 552 P.2d 63. The record indicates that the commissioners were not even aware that Reiter was not entitled to a hearing at the time they promised the hearing. If they did not know of their right to fire Reiter without a hearing, they could not have voluntarily and intentionally waived that right.

- 8 -

A waiver can also arise by conduct, in which case it is called an "implied waiver." This doctrine requires a detrimental reliance by the party who is led by the conduct to believe a waiver has occurred. See Stanolind Oil & Gas Co. v. Guertzgen (9th Cir. 1939), 100 F.2d 299; Black's Law Dictionary, p. 1752. Thus the doctrine of "implied waiver" is akin to estoppel.

The elements of estoppel are set forth in section 26-1-601, MCA. Essential to the doctrine is the detrimental reliance by the innocent party upon the representations of the other party. In this case, the record shows no evidence of reliance by Reiter. Reiter was promised a hearing and also offered a reinstatement as a janitor rather than a supervisor. From Reiter's deposition it is apparent that he did not refuse the demotion as a result of the promise of a hearing. Rather he refused the demotion because the proposed contracts required him to acknowledge that his behavior was unsatisfactory and he felt these contracts were demeaning. Therefore, since there is no evidence of a detrimental change in position due to the promise, the doctrines of equitable estoppel and implied waiver do not apply.

Since Reiter has no due process right to a hearing and the commissioners' promise was unenforceable, the respondent's motion for summary judgment was properly granted.

The order of the District Court entering summary judgment in favor of the respondents is hereby affirmed.

_____
Chief Justice

We concur:

_____

_____

- 9 -

------------------------------------

------------------------------------
Justices

      This cause was submitted for decision prior to January 5, 1981.

      Mr. Justice Daniel J. Shea will file a written dissent later.

Mr. Justice John Conway Harrison dissenting:

I must dissent with the opinion of the Court on the basis of the provisions of section 28-1-201, MCA. This provision in our law, in my opinion, can be looked to in fact situations such as this as a statute to protect persons, such the petitioner in this case, who have a long period of public employment. Section 28-1-201 provides:

> "General duty of care. Every person is bound, without contract, to abstain from injuring the person or property of another or infringing upon any of his rights."

Developing in the law around the United States are remedies for employees who serve under the "at-will" statute and rule. The more equitable and just rule, in my opinion, is that an implied contract exists between the employer and the employee which gives additional consideration to an employee of some eighteen years of continuous employment, as in this case. Foley v. Community Oil Company, Inc. (D. N.H. 1974), 64 F.R.D. 561; Monge v. Beebe Rubber Co. (N.H. 1974), 316 A.2d 549; Fortune v. National Cash Register Co. (1977), 373 Mass. 96, 364 N.E.2d 1251.

In Monge the court reviewed the common-law rule of "at-will" employment contracts. The Monge court noted that the rule was harsh and outdated, and then modified the rule by holding that a determination motivated by bad faith or retaliation constituted a breach of contract. It was a modified "at-will" rule that the New Hampshire Federal Court applied to deny an employer's motion for a judgment on the pleadings.

In Foley, when an employee of forty years of service was unjustly discharged, the Federal District Court stated that the longevity of service should give rise to an implied

-11-

contract right but that the court was no longer bound by the strict common-law "at-will" rule according to New Hampshire law.

The next case, the Massachusetts case of Fortune v. National Cash Register Co., supra, involved an employee who was discharged after working for the company some twenty-five years. The Court found that there was a breach of an implied contract of good faith because the employer was attempting to avoid payment of a substantial commission.

While it has not been established that a public employee with longevity has a constitutional right to a continued position, I believe the rule established is that one is entitled to a hearing before he is summarily discharged, as appellant was in this case. I would hold that the summary dismissal of appellant violated a due process right. Slochower v. Board of Education (1956), 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 672.

For the above reasons, I would return the matter to the District Court and require that a full hearing be given to appellant in this matter.

John Conway Harrison
Justice