No. 81-65

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

HELEN L. LOVELL,

Plaintiff and Appellant,

vs.

JOSEPH G. WOLF, City-County
Manager for Anaconda-Deer Lodge County;
and ANACONDA DEER LODGE COUNTY, a
political subdivision,

Defendants and Respondents.

Appeal from: District Court of the Third Judicial District,
In and for the County of Deer Lodge, Montana
Honorable Robert Boyd, Judge presiding.

Counsel of Record:

For Appellant:

Michael J. McKeon argued, Anaconda, Montana

For Respondents:

John Radonich, County Attorney, argued, Anaconda,
Montana

Submitted: February 24, 1982

Decided: APR 15 1982

Filed: APR 15 1982

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a judgment of the District Court of the Third Judicial District, in and for the County of Deer Lodge, denying Helen Lovell reinstatement and back-pay resulting from her discharge from county employment.

The appellant, Helen Lovell, is a sixty-five-year-old woman, who was elected to three, four-year terms as the clerk and recorder of Deer Lodge County, Montana. Her first elected term began on January 3, 1967. She then was elected for a term begining in January 1971, and another beginning in January 1975. The last term was to run until January 1979, but on May 2, 1977, a county form of government, consolidating the city and county governments, was put into effect. That charter had certain provisions which are important to the decision in this case. The charter provides:

> "Article IV, Section 3.  Duties.
>
> "1.  The Anaconda-Deer Lodge County Manager shall be the chief administrative officer of the local government and shall be responsible for all administrative functions of Anaconda-Deer Lodge County, unless otherwise provided by this Charter.
>
> "2.  The Manager's responsibilities shall be to: . . . c.  appoint and remove department heads with the approval of the Commission.
>
> ". . .
>
> "Article V, Section 2.  Administrative Code.
>
> "1.  The Administrative Code shall provide the complete plan of organization and struc-ture of Anaconda-Deer Lodge County.
>
> "2.  The Administrative Code shall include:
>
> "a.  the departmental organization of the government, the nature and scope of each department and rules and procedures for department operation . . .

"...

"Article V, Section 3.  Personnel System.

"1.  The Anaconda-Deer Lodge County Personnel System shall provide for hiring on the basis of merit and shall include a salary schedule, provisions for vacations, sick leaves, insurance and other benefits for all employees in accordance with provisions of this Charter; procedures for employees to have an opportunity to be heard upon their request pending discharge, suspension or any designated disciplinary action and shall provide for such other procedures as necessary for an equitable Personnel System including honoring of all collective bargaining agreements.

"...

"Article X, Section 2.  Continuity.

"...

"5.  All Anaconda and Deer Lodge County officials or employees, except the Mayor, City Council members, and County Commissioners, may continue in the performance of their duties according to existing personnel procedures or until their positions are terminated by the Administrative Code. Employees whose positions are terminated by provisions of the Administrative Code shall be given first consideration for other Anaconda-Deer Lodge County employment.

"...

"Article X, Section 4.  Manager, Administrative Code, and Personnel System.

"1.  The Commission shall appoint the Manager on or before August 1, 1977.

"2.  Within nine (9) months of the appointment of the Manager, the Manager shall prepare and submit an Administrative Code and Personnel System to the Commission for review, amendment, and adoption by ordinance. The Code and Personnel System shall not be in violation of any union collective bargaining contract in force at the time of adoption of said Code and System.

"3.  The Commission shall adopt the Administrative Code and Personnel System by ordinance as submitted or amended within three (3) months of the date of submission by the Manager.

-3-

"4. The method and schedule for implementation of the Administrative Code and Personnel System shall be provided in the ordinances adopting them . . ."

At the time of the institution of the new form of government, May 2, 1977, the Board of County Commissioners of Anaconda-Deer Lodge County passed a resolution providing for a personnel system pursuant to Article V, Section 3, which in effect appointed Helen L. Lovell supervisor, clerk and recorder's office, and provided as follows:

". . . Be it further resolved that the above named individuals serve in the above entitled capacities until such time as the charter of the Anaconda-Deer Lodge County is implemented and the various offices and departments are merged and consolidated and until further resolution of the Anaconda-Deer Lodge County Commission."

The effect of the resolution as to Helen Lovell was to make her position one of appointment rather than election.

In July 1977, the defendant-respondent, Joseph G. Wolf, was appointed manager of the Anaconda-Deer Lodge County. In February 1978, after six months in office, Wolf informed the appellant that she was to record and help Regina Connor, who had been moved at the time of the consolidation from the city clerk's job to the office of clerk and recorder. Wolf testified that sometime at the end of 1977 he called the city and county employees to a meeting in the courtroom of the county courthouse to discuss the job situation and the combining of the city and county offices. He also testified that at this time he informed county employees that Connor was to be the clerk and recorder after the first of the year.

The appellant testified that she was not told she was no longer clerk and recorder but simply was assigned to

other jobs in the office and told to assist Connor and show her around the office. At no time was there any resolution by the board of commissioners terminating appellant's job or transferring her to a lesser job in the city-county setup. The appellant testified that sometime in mid-February she was called to Wolf's office where he informed her he was not satisfied with her work. At that time he asked her if she had considered retiring, and she informed him she was unable financially to retire. On March 15, 1978, Wolf again suggested that appellant retire. He told her that her work was unsatisfactory and that he had had complaints from abstractors. He then informed her she would be terminated as of March 17.

Wolf testified that at the time he went to work in August 1977 he was familiar with the Resolution No. 1, passed by the commissioners making appellant the supervisor of the clerk and recorder's office. He also testified he was familiar with the charter which created the Anaconda-Deer Lodge County government and that he was aware of the administrative code to be provided by the commissioners.

In addition, Wolf was aware that the charter directed the Anaconda-Deer Lodge county commission to adopt a personnel system within nine to twelve months. During that period no personnel or administrative code was adopted by the commission nor was any personnel system adopted or in effect when Wolf demanded the appellant's resignation. He testified that while no changes had been made officially, "in his mind" Connor became the clerk and recorder as of the first of the year, 1978. However, it was not until March 9, 1978, several months later, that Connor was appointed the

supervisor of the clerk and recorder's office. During this period, from January 1 to March 17, in spite of a change of duties, the appellant was paid the same salary she was paid as clerk and recorder. Wolf's recommendation and the commissioners' act on March 9, 1978, were several weeks after Wolf had his first conversation with the appellant and just a couple of days before the termination of her job in the clerk and recorder's office.

Wolf testified that following the Resolution No. 1, dated May 2, 1977, there was no resolution changing the appellant's status until March 1978. Wolf also testified that prior to that time, he had given appellant a verbal warning but had not given her any written notification that she was under consideration for suspension or termination.

Appellant testified that during the time she was clerk and recorder of Deer Lodge County, as an elected official, she could not join a union because of her elective status. Some question is raised by the respondents alleging that when appellant was demoted from clerk and recorder to a lesser position in January or February she was required to join the union and, having failed to do so, she has waived her rights to a collective bargaining hearing. However, testimony of both the appellant and the courthouse union shop steward indicates that the appellant made an effort to join the union but was either denied membership or told that the union would look into the matter for her. Her termination came before anything could be done in her capacity as a nonofficial employee of the Anaconda-Deer Lodge County office.

Three issues are presented for review:

-6-

1. Whether the plaintiff-appellant was denied due process when she was discharged from her position as clerk and recorder of Anaconda-Deer Lodge County without a hearing to determine if there was cause for her termination.

2. Whether the plaintiff-appellant was denied due process rights when a new supervisor of clerk and recorder's office of Anaconda-Deer Lodge County was appointed while the appellant had never been removed officially as clerk and recorder of Deer Lodge County, as required by statute and the local government charter.

3. Whether the plaintiff-appellant is precluded from maintaining this action if she failed to exhaust the administrative remedies which may have been available to her.

In view of the fact that issues one and two, concerning the due process question, are controlling in this case and require reversal of the District Court's judgment, the two will be combined for discussion.

The respondents argue that the issues of due process were not raised at the trial court level and, therefore, cannot be considered on appeal. Chadwick v. Giberson (1980), ____ Mont. ____, 618 P.2d 1213, 37 St.Rep. 1723. We do not agree.

Here, the due process issue ran through the entire trial and was brought to the attention of the District Court by the appellant's proposed findings of fact. There was a specific charge that the county's failure to adopt a "personnel system" providing for a hearing before discharges was a "violation of . . . due process." The case was tried as a due process question in spite of the fact that the

-7-

words "due process" do not appear in either the pleadings or the trial transcript and the due process concern is the pivotal issue presented in this appeal.

From the city-county manager's first transfer of appellant's duties to his final termination of her employment, appellant's rights under the charter were neither recognized nor protected. The charter dictated how each appointed department head was to be removed, and it required any removal to be approved by the commission. The charter provisions were never followed in the transfer of appellant's duties after her appointment as supervisor of the clerk and recorder's office, and they were not followed in removing her from her job until early March. The record indicates that the notary public seal obtained by appellant during the time she was clerk and recorder was still being used up until the time she was fired. In addition, appellant was paid the same salary throughout the entire period until she was terminated.

In her capacity as clerk and recorder before the consolidation, the appellant was the general supervisor of her office and did not perform the specific jobs within the office which required special skills. Rather, she was always available to the board of county commissioners as their clerk and carried out other duties of the office which did not require the specialization called for under the new form of government. Following her transfer to records clerk she was called upon to do technical jobs within the office for which she had no expertise. One of the reasons given by Manager Wolf for her termination was that he had complaints from two abstractors in town that appellant did not properly

record instruments and her writing was so bad mistakes were being made in the recording. However, the record is also clear that Wolf did not call this to her attention until the day he notified her that she was no longer employed, nor was any effort made to train her for the skills necessary to stay on the job.

In considering the due process protection argument of the appellant, we look to three recent cases of this Court: Reiter v. Yellowstone County (1981), ___ Mont. ___, 627 P.2d 845, 38 St.Rep. 686; Gates v. Life of Montana Insurance Company (1982), ___ Mont. ___, 638 P.2d 1063, 39 St.Rep. 16; and Nye v. Department of Livestock (1982), ___ Mont. ___, 639 P.2d 498, 39 St.Rep. 49. See: Love, Damages: A Remedy for the Violation of Constitutional Rights, 67 Cal. Law Rev. 1242 (1979).

This Court held in Reiter, supra, that to show a property interest or liberty interest in his job, and thus be entitled to claim due process protection, an employee must be able to point to an independent source such as state law or an understanding between the employer and the employee. Here, we find three sources by which appellant can establish a due process protection: (1) the charter; (2) the statute, section 16-5115.12, R.C.M. 1947; and (3) the collective bargaining agreement which we find unnecessary to consider in deciding this case.

We note that neither Gates nor Nye had been decided when the parties in this case filed their briefs so they were not discussed there. However, in addition to Reiter, this Court's holding in Nye adds strength to appellant's cause in this matter. There, this Court held on the

plaintiff's claim of wrongful discharge that administrative rules may become the source of a public policy which would support a claim of wrongful discharge. In Nye, as in this case, there was no showing of "just cause" for removal from her status as permit clerk. She was, as the appellant here, entitled to a proper hearing before termination from her permanent position.

We reverse the judgment of the District Court denying appellant reinstatement in her position as clerk and recorder. The cause is remanded to the District Court with the following instructions: that appellant be reinstated to her position as clerk and recorder; that she be paid backpay for the period from March 1978 to present, subject to any offsets; and that hearings be held to determine her future status as an employee of the City of Anaconda-County of Deer Lodge.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Mr. Chief Justice Frank I. Haswell specially concurring:

I concur in the result on the basis that appellant Lovell was denied due process because there was no valid change in her status and she was discharged without a hearing.

_Frank I. Haswell_
Chief Justice