JUSTICE NELSON
dissenting.
I respectfully dissent. Except as herein set forth, I do not disagree with the majority’s explication of the general principles of law pertaining to qualified immunity and to an employee’s property interest in her employment. I do, however, disagree with its application of these principles to the facts here. In that regard, I also believe that the courts — this Court included — have unnecessarily and improperly confused what is, in essence, a simple and straightforward legal concept that has been clearly established in the law for more than a decade: An employee whose employment is subject to termination only for “just cause” or “good cause” because of a contract, statute, rule or policy has a property interest in her employment and may not be deprived of that interest without due process of law; such an employee is not an “at will” employee.
First, as regards this case, the majority correctly acknowledges that, in the application of the doctrine of qualified immunity, whether the law at issue was “clearly established” focuses (in the words of the opinion) on the “legal authorities extant at the time the defendant acted.” What, then, was the law “extant” at the time Boreen was constructively terminated on April 13,1990? Obviously, in answering this question we need look no further than to federal law and Montana law as of that date.
As to federal law, the U.S. Supreme Court’s decision in Cleveland Board of Education v. Loudermill (1985), 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494, had been the law of the land for five years prior to Boreen’s discharge. We discussed Loudermill at length in Boreen v. Christensen (1994), 267 Mont. 405, 884 P.2d 761, (Boreen I), and there is no need to repeat that analysis. Important to our discussion here, however, and again as the majority acknowledges, the Court concluded in Loudermill that the “just cause” provision in the Ohio statute at issue there created a property interest in Loudermill’s public employment. The majority cites no federal case decided in the *393 years between Loudermill and Boreen’s termination that departed from that simple and straightforward proposition.
Accordingly, we must next look to the State of Montana law as of April 13,1990. For some twelve years prior to Boreen’s discharge, her public employment was subject to and was protected by State administrative regulations which (a) premised all disciplinary action, including discharge, on there being “just cause” and (b) required “due process” in the administration of such discipline or discharge. Again, these administrative regulations are discussed in and appended to our decision in Boreen I.
Thus, as of April 13, 1990, a public employer in Montana which had adopted the administrative regulations aforementioned, knew or should have known that the public employee could not be terminated absent there being just cause, as defined in 2.21.6507(6), ARM, and that the employee was entitled to due process prior to termination all as set forth and defined in 2.21.6506, 6507 and 6509, ARM. Moreover on that date, given Loudermill, that same public employer knew or should have known that if state law conditions termination of public employment on “just cause” — as was the case here — then that law creates in the employee a property interest in her employment.
In short, on April 13,1990, the law was clearly established that an employee whose employment is subject to termination only for “just cause” under state law had a property interest in her employment and could not be deprived of that interest without due process of law. That simple and straightforward legal principle derived directly from the unambiguous requirements of Montana law and federal law “extant” on that date. On April 13, 1990, Youngblood needed to look no further than the Administrative Rules of Montana and Loudermill to arrive at that conclusion.
Notwithstanding, Respondents here go to great lengths arguing that the above settled principle of law was not clearly established in April 1990 — and in fact was not clearly established until our decision in Boreen I. The majority agrees. However, viewed from an objective standard, as the majority concedes it must, such a position is insupportable.
First, as early as 1985, the principle of law articulated above could not have been more clear to Montana public officials. Through Attorney General Mike Greely, Montana participated in Loudermill as amicus curiae on behalf of the Cleveland Board of Education. See, Loudermill, 470 U.S. at 534, 105 S.Ct. at 1489. The State took the position that state employees should not have a property interest in *394 their employment simply because they are protected by an administrative just cause requirement. Obviously, Loudermill can hardly be read as supportive of that position. Having advanced that argument, however, and in light of the Court’s decision in Loudermill, the handwriting was clearly on the wall five years before Boreen was constructively discharged. She was protected by a just cause/due process provision in Montana law; she had a property interest in her employment.
Second, while not dealing with the constitutional property interest issue addressed in Loudermill, this Court recognized in Nye v. Department of Livestock (1982), 196 Mont. 222, 639 P.2d 498, that the same just cause/due process regulations which governed Boreen’s employment were a source of public policy that would support a claim of wrongful discharge and that the State (Department of Livestock) had violated public policy by failing to apply these regulations. Again, three years before Loudermill, public employers in Montana were on notice that just cause/due process requirements in administrative regulations would implicate an employee’s right to notice and an opportunity to be heard and to the retention of her job if those regulations were not followed.
Under these circumstances and given the actual state of the law as of April 13, 1990, any claim that the principle of law establishing Boreen’s property interest in her employment was not clearly established must necessarily find justification in some other basis than a simple reading of the provisions of Montana’s public policy expressed in the Administrative Rules of Montana cited above and in what the majority concedes is the “seminal [U.S. Supreme Court] case” on this subject.
Enter the “at will” employment doctrine. As of April 13, 1990, one case, Reiter v. Yellowstone Cty. (1981), 192 Mont. 194, 627 P.2d 845, had discussed Montana’s at will employment statute, § 39-2-503, in conjunction with an employee’s claim of a property interest in his employment. We held that, “[t]he Montana statute create[d] no property interest in employment if there [was] no specified term” and therefore, Reiter had no constitutionally protected property interest in his employment. Reiter, 627 P.2d at 849-50. Importantly, as we. pointed out in Boreen I:
Reiter did not raise, nor did we address, the effect on the “at will” nature of the plaintiff’s employment of the parties conditioning termination on a demonstration of “just cause” under an administrative regulation adopted by the government. In fact, we specifi *395 cally pointed out that Reiter’s employment “was not covered by any
written contract or collective bargaining agreement or ordinance.” Boreen I, 884 P.2d at 765 (citing Reiter, 627 P.2d at 847).
Accordingly, whatever Reiter stands for, it can hardly be argued that our decision in that case made unclear the unambiguous requirements of Montana law as expressed in the above cited administrative regulations and in the subsequent Loudermill decision, when Reiter did not even address the Loudermill issue. Correctly, we rejected out of hand any application oí Reiter (and its progeny) in Boreen I and we should, likewise, do so here.
Montana’s “at will” employment statute and the cases interpreting that statute simply have no bearing where the employee is protected, by a just cause/due process legal requirement. In fact, the whole concept of “at will” employment is antithetical to the legal mandate that an employee may not be discharged except for just cause or good cause. “At will” employment, as we have defined it, is the ability of an employer to dismiss his employee “for a good reason, bad reason or for no reason at all.” Scott v. Eagle Watch Investments, Inc. (1991), 251 Mont. 191, 195, 828 P.2d 1346, 1349. That definition simply cannot be reconciled with a legal requirement that the employer can only discharge his employee for just cause or good cause — i.e., as the corollary, that he may not terminate his employee for a bad reason or no reason at all. The concepts of “at will” employment and “just cause” termination are purely and simply incompatible with each other, and our use here of “at will” employment cases to justify our decision not only flies in the face of our rejection of the applicability of those cases in Boreen I, but also lends further confusion to what was, at least in April of 1990, a clearly established principle of law. The issue of “at will” employment was a red herring in Boreen I; it is in this case as well. Boreen never was an “at will” employee; she was entitled to retain her job until her employer established just cause for her termination and provided her with due process before discharging her. Boreen I, 884 P.2d at 766-67.
That brings me to my last point. The law in April 1990 was clearly established. The majority’s reliance on post-1990 cases to explain what law was extant at the time Boreen was constructively discharged is plainly improper under the doctrine of qualified immunity articulated in Harlow v. Fitzgerald (1982), 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396. The fact that since 1990 courts have engrafted onto the rule in Loudermill legal concepts — like “at will” employment — that plainly have no bearing on the rule articulated in that *396 case speaks not to any confusion in the law in 1990, but rather to judicial attempts to avoid what Loudermill — and Montana’s administrative regulations — clearly require.
Much is made by the Respondents and by the majority of our statements in Boreen I that our decision was one of first impression. True enough. Boreen I was just such a case; this Court had not, prior to that case, directly addressed the Loudermill issue. It does not, however, follow from a case being one of first impression before a particular court, that the legal principle on which the case is decided has not been already clearly established in the black-letter law or in some other controlling body of case law. In fact, as pointed out above, that was precisely the situation in Boreen I. Montana’s administrative regulations and Loudermill dictated the rule in Boreen I. Moreover, by. the time we decided Boreen I in 1994, the courts had had four years to complicate and confuse what was clear in 1990. Notwithstanding, even with the additional four years of state and federal case law, this Court had no apparent difficulty in concluding, on the basis of Montana’s administrative regulations and Loudermill, that Boreen had a property interest in her public employment. If that simple principle of law was clear to this Court in 1994, it was, likewise, certainly clearly established in April 1990. We did not make any new law in 1994; we simply set forth what clearly had been the law since 1985.
Our decision here cannot be justified on the basis of the principles of law cited by the majority. The law was clearly established on April 13, 1990: because Boreen’s employment was protected by state regulations prohibiting her from being discharged absent her employer demonstrating just cause, she had a property interest in her employment and could not be deprived of that property interest without due process of law. Youngblood is not entitled to qualified immunity from her § 1983 claims.
Katharine Boreen won the battle in Boreen I; unfortunately, she has lost the war in Boreen II. I dissent.
JUSTICES TRIEWEILER and HUNT join in the foregoing dissent.